STATE, Respondent, v. MARGOLES, Appellant.*

*October 2—October 29, 1963.*

\* Motion for rehearing denied, with $25 costs, on December 20, 1963.

For the appellant there was a brief by *Roland J. Steinle, Sr.*, and *Roland J. Steinle, Jr.*, both of Milwaukee, and oral argument by *Roland J. Steinle, Sr.*

For the respondent the cause was argued by *Warren H. Resh,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *William J. McCauley,* district attorney of Milwaukee county, and *Hugh R. O'Connell,* first assistant district attorney.

FAIRCHILD, J. Defendant's brief makes it clear that he is not claiming error committed by the circuit court, nor a lack of legal foundation for the judgment. He asks us to use our discretionary power of reversal or modification under sec. 251.09, Stats.

Defendant advances three propositions, which we shall discuss in order:

(1) Defendant argues that the procedure followed in seeking to suspend or revoke defendant's license to practice medicine was not made clear by well-established precedent with resultant uncertainty as to how to proceed in the matter.

Sec. 147.20 (2), Stats., provides for action brought by the district attorney upon a charge that a licensee has been guilty of unprofessional conduct. If the facts are in dispute there is a trial before the court alone, or with a jury, and a finding whether defendant is or is not guilty. If found guilty, the court, in its discretion, renders judgment either of suspension of license for not to exceed two years, or revocation thereof. The trial will have informed the court as to the nature of defendant's conduct. Counsel points out, however, that the statute prescribes no procedure for presenting additional information to aid the court in reaching a decision to revoke or suspend.

In the instant case the unprofessional conduct consisted of offenses against the laws of the United States, and defendant had been convicted. Trial in circuit court was unnecessary, because guilt of unprofessional conduct was determined from the admission in defendant's answer. The question

arose whether the court's investigation of additional facts concerning defendant's character and professional competence was in the nature of a presentence investigation in a criminal case. Judge DECKER concluded that it was not and applied the rules of evidence at the hearing. This appears to be the uncertainty to which defendant has referred.

We assume the ruling was correct, but do not consider the defendant has shown any injury resulting from the uncertainty. Although defendant asserts he was precluded from presenting a substantial amount of useful information, we are unaware of any piece of information offered by defendant and rejected by the court except for an affidavit of defendant, who was imprisoned and unable to attend the hearing.

Counsel offered this affidavit at the end of the hearing. Objection was sustained because of lack of opportunity to cross-examine. The offered document has not been included in the transcript. Defendant's counsel described it as "short" and "with reference to his background." Counsel also said that the substance of the information in the affidavit was already in evidence through the testimony of Mrs. Margoles. No request was made for an opportunity to take defendant's deposition.

(2) Defendant claims that the trial court found itself in a position where as a practical proposition it could not exercise a discretion to suspend rather than to revoke.

Defendant had been sentenced to imprisonment for six years. It was not known when he might be released on parole. In this connection Judge DECKER pointed out that the statute did not authorize the suspension to be made operative at some future date, as upon release from prison or at the termination of parole, and that suspension would be meaningless if it ran while defendant was prevented from practicing by his imprisonment.

We interpret the court's statement as meaning that under the circumstances he considered a two-year suspension inadequate. It is true that if the court deems a two-year suspension inadequate, the statute leaves no alternative but revocation.

We find implicit in the statute the proposition that if the circumstances call for cessation of a licensee's right to practice for more than two years, it would be bad public policy to give him an automatic reinstatement at the end of the longer period. That would result from suspension. Rather the burden should be upon him to establish his good moral and professional character and his competency to practice. Thus sec. 147.20 (4), Stats., provides that a license may be restored, after a first revocation, upon appropriate findings by the court and upon written recommendation of the state board of medical examiners. This provision contemplates the rehabilitation of the licensee and provides a method for determining whether rehabilitation has occurred.

(3) Defendant claims that his imprisonment at the time of the hearing precluded the trial court from observing his demeanor, prevented his counsel from conferring with him immediately at the hearing, and deprived the court of his testimony, both on direct and cross-examination.

This claim is not impressive because of defendant's failure to request or even suggest to the court an adjournment on the ground of his inability to be present.[2] No deposition was

[2] The hearing was held February 13, 1962. On several occasions during 1961 there had been motions with respect to the pleadings and other procedural matters. Defendant's counsel wrote Judge GORDON December 5, 1961, saying that defendant had decided not to amend his answer and requesting a hearing before December 21st because associate counsel would be absent several weeks after that time. There was a hearing December 20th at which the presentation of proof was set for February 13th. On January 2d that date was confirmed at a pretrial conference with Judge DECKER. On February 2d, defendant did move for an ad-

taken. The only reference we have found to defendant's inability to be present occurred at the close of the hearing when his affidavit was offered and rejected. Even then no request was made for time in which to take his deposition.

In the opinion filed by Judge DECKER, he acknowledged that defendant was a hard-working and competent surgeon, but with a substandard reputation for professional integrity. He had not only struck at the economic foundation of his government by fraudulent income-tax returns, but by corruptly endeavoring to influence a judicial officer and to obstruct justice had compounded his crime by striking at the courts.

"The defendant's moral turpitude evidenced in one aspect of his relationship to society was thus reaffirmed in connection with another relationship of his to society. Upon what basis can the Court conclude that this perfidy has not permeated his entire character and will not extend to the physician-patient relationship?"

We conclude that there was no abuse of discretion in entering judgment of revocation. We find no probability of any miscarriage of justice which would lead us to exercise our discretionary power under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.

GORDON, J., took no part.

journment, but on grounds wholly unrelated to his inability to be present, and counsel offered to consent to hearing early in April if that adjournment were granted. At no point prior to hearing does there appear any suggestion by counsel that the matter could not be fairly presented in defendant's absence.